Field, J.
delivered the opinion of the Court.
The prisoner was indicted and convicted of murder in the second degree, in the Circuit court of Hanover, at its April term last past, and was sentenced to the penitentiary for five years, the period of time ascertained by the jury. The murder consisted in the killing of a negro man slave by the name of Sam, the property of the prisoner, by cruel and excessive whipping and torture, inflicted by Souther, aided by two of his other slaves, on the 1st day of September 1849. The prisoner moved for a new trial, upon the ground that the offence, if any, amounted only to manslaughter. The motion for a new trial was overruled, and a bill of exceptions taken to the opinion of the Court, setting forth the facts proved, or as many of them as were deemed material for the consideration of the. application for a new trial. The bill of exceptions states : “ That the slave Sam in the indictment mentioned, was the slave and property of the prisoner. That for the purpose of chastising the slave for the offence of getting drunk, and dealing as the slave confessed and alleged, with Henry and Stone, two of the witnesses for the Commonwealth, he caused him to be tied and punished in the presence of the said witnesses, with the exception of slight whipping with peach or' apple tree switches, before the said witnesses’ arrival at the scene after they were sent for by the prisoner, (who were present by request from the defendant,) and of several slaves of the prisoner, in the manner and by the means charged in *679 the indictment; and the said slave died under and from the infliction of the said punishment, in the presence of the prisoner, one of his slaves, and one of the witnesses for the Commonwealth. But it did not appear that it was the design of the prisoner to kill the said slave, unless such design be properly inferrible from the manner, means and duration of the punishment. And on the contrary, it did appear that the prisoner frequently declared while the said slave was undergoing the punishment, that he believed the said slave was feigning and pretending to be suffering and injured, when he was not.” The Judge certifies that the slave was punished in the manner and by the means charged in the indictment. The indictment contains fifteen counts, and sets forth a case of the most cruel and excessive whipping and torture. The negro was tied to a tree and whipped with switches. When Souther became fatigued with the labour of whipping, he called upon a negro man of his, and made him cob Sam with a shingle. He also made a negro woman of his help to cob him. And after cobbing and whipping, he applied fire to the body of the slave; about his back, belly and private parts. He then caused him to be washed down with hot water, in which pods of red pepper had been steeped. The negro was also tied to a log and to the bed post with ropes, which choked him, and he was kicked and stamped by Souther. This sort of punishment was continued and repeated until the negro died under its infliction. It is believed that the records of criminal jurisprudence do not contain a case of more atrocious and wicked cruelty than was presented upon the trial of Souther; and yet it has been gravely and earnestly contended 'here by his counsel, that his offence amounts to manslaughter only.
It has been contended by the counsel of the prisoner, that a man cannot be indicted and prosecuted for the cruel and excessive whipping of his own slave. That *680 it is lawful for the master to chastise his slave; and that if death ensues from such chastisement, unless it was intended to produce death, it is like the case of homicide, which is committed by a man in the performance of a lawful act, which is manslaughter only. It has been decided by this Court, in Turner's Case, 5 Rand., that the owner of a slave, for the malicious, cruel and excessive beating of his own slave, cannot be indicted; yet it by no means follows when such malicious, cruel and excessive beating results in death, though not intended and premeditated, that the beating is to be regarded as lawful, for the purpose of reducing the crime to manslaughter, when the whipping is inflicted for the sole purpose of chastisement. It is the policy of the law in respect to the relation of master and slave, and for the sake of securing proper subordination and obedience on the part of the slave, to protect the master from prosecution in all such cases, even if the whipping and punishment be malicious, cruel and excessive. But in so inflicting punishment for the sake of punishment, the owner of the slave acts at his peril ; and if death ensues in consequence of such punishment, the relation of master and slave affords no ground of excuse or palliation. The principles of the common law in relation to homicide, apply to his case, without qualification or exception; and according to those principles, the act of the prisoner, in the case under consideration, amounted to murder. Upon this point we are unanimous. '
But what was the law in respect to felonious homicide on the 1st day of September 1849, when the of-fence was committed. It is to be found in the Sessions Acts of 1847-8, p. 95. By that act it is declared “ that unlawful homicide shall be murder of the first degree, murder of the second degree, or manslaughter.”
“ Murder committed by poison, lying in wait, duress of imprisonment, starving, wilful and excessive whip *681 ping, cruel treatment, or any kind, (not any other kind as the law theretofore was,) 1 of wilful,’ deliberate and premeditated killing, or in the attempt to commit any arson, rape, robbery, or burglary, shall be murder in the first degree, and all other murder shall be murder in the second degree.” “ Murder in the first degree shall be punished with death.” The Judge certifies in his bill of exceptions, as a fact proved in the cause, that “ the slave died under and from the infliction of the said punishment.” Apply the words of the act of Assembly to this case, and it clearly appears that the crime of the prisoner is not manslaughter, but murder in the first degree.
Judge Leigh does not concur in this last view, namely, that homicide committed by excessive whipping, must be necessarily murder in the first degree, without regard to the intention of the offender. He is of opinion that to constitute murder in the first degree, there must be an intention to kill.
The record in this case presents several other matters for the consideration of the Court. It is contended that the proceedings before the Court of examination were not such as the law required. A copy of these proceedings have been exhibited in the record, and it appears from that copy that objections were made in the Court of examination to the previous proceedings had before the committing magistrate; but they were overruled by the Court. Whether properly overruled or not, is a matter which this Court has no jurisdiction to enquire into; nor had the Circuit court any such jurisdiction. No appeal could be taken from the decision of that Court. They had no right to sign any bill of exceptions: and consequently a bill of exceptions signed by the Court cannot be regarded as a part of the record of the case. Commonwealth v. Hickman, 2 Va. Cas. 60; Code of Va., p. 672, § 8. But if we could look into the proceedings of that Court, for *682 the purpose of reviewing those .opinions upon the objections to them, by the prisoner’s counsel, we should say that the proceedings were, in all respects, regular, and that the Court properly overruled the objections of the prisoner. The Circuit court has the right however, of looking into the proceedings of the Court of examination for two purposes, and for two purposes only. 1st, To see that it was a legally constitued Court, to make the examination. 2d, To see what offence it was for which the prisoner had been examined. The pleadings in this cause made it necessary to look into the proceedings of the Court of examination for those purposes, and this brings us to the questions arising upon those pleadings.
The prisoner was first indicted on the 2d of April 1850. This indictment contained fourteen counts. The prisoner demurred to the indictment and to each count thereof, in which the attorney for the Commonwealth joined. The Court overruled the demurrers, except the demurrer to the fourteenth count, which was sustained. To the remaining thirteen counts the prisoner pleaded in abatement that he had not been examined for the offences’ charged in the indictment before the Court of examination. To this plea the attorney for the Commonwealth filed a very short replication, stating, that the prisoner had been duly examined by a Court of examination; and tendered an issue to the country. Not one word of reference is made in the replication to the record and proceedings of the Court of examination. This plea was fatally defective. The prisoner demurred to it, and the demurrer was sustained, which the Court was bound to do, and following it up quashed the indictment, not because no such examination had been had, but because no record of such examination had been produced and avouched with the replication. This was done at the October term 1850, and.on the following day a new indictment was framed *683 by the grand jury, containing fifteen counts, fourteen of which are the same as those of the first indictment, with, in some of the counts, some few and very immaterial deviations from the old indictment, and the new count being substantially like the others, or some of them. To this indictment the prisoner demurred. He also demurred to each count thereof; in which demurrer the attorney for the Commonwealth joined; and the Court overruled the demurrer out and out. And we think it was properly done. For we cannot perceive any error in the indictment or in either count; and it is very certain that no error has been specifically presented in the pleading or alluded to in argument. Yet we beg to be understood as not approving of the practice of embarrassing the trial of an important cause with so many unnecessary counts in an indictment. The prisoner then pleaded in abatement that he had not been examined for the offences charged in the indictment before a proper and legally constituted Court of examination according to law. To this plea the attorney for the Commonwealth replied that the prisoner had been duly examined for the said offences, and avouched the record of the Court of examination. To this replication the prisoner tendered four rejoinders, all of which, according to the rules of pleading, were inadmissible, except the first, one of which was held to be bad upon demurrer, and the other three were rejected by the Court. These several rejoinders, though differing somewhat from each other in words and phraseology, were in substance the same. They relied upon the judgment of the Court upon the demurrer of the prisoner to the replication of the attorney for the Commonwealth to the prisoner’s plea in abatement to the first indictment, by which that indictment was quashed, as being a bar to any other and subsequent indictment against the prisoner for the same offence, upon the examination which had been had before the County court of *684 Hanover before the finding of the first indictment; and averred that no new or subsequent examination of the prisoner for that offence had been had before a Court of examination. We are unanimously of the opinion, to say nothing of the objection that might be made to them upon other grounds, that the matters set forth in these rejoinders constituted no bar whatever to the present prosecution. The judgment of the Court referred to in these rejoinders extended to the first indictment only, and constituted a bar to all further proceedings upon that indictment. When that indictment was quashed the case stood as if no indictment had been found; and it was the unquestionable right and duty of the Commonwealth’s attorney to prefer against the prisoner a new indictment for the murder of which he had been examined by the County court of Hanover. The prisoner after thé Court had disposed of his rejoinders, demurred to the replication. This demurrer was also properly overruled by the Court.
Upon the whole we are clearly of opinion that there is no error in the record of which the prisoner can complain, and the writ of error is refused.
After the trial was over, the prisoner moved the Court in taxing the costs of the prosecution, to omit the per diem allowance which had been made for the venire. The Court refused to do so, and directed the clerk to include the allowance in the bill of costs. It is provided by law that when qualified jurors cannot be conveniently found in the county in which the trial is to take place, they may be procured in some other county; the law then provides that “ Every juror so summoned shall be paid one dollar for each day he attends, and the same mileage as a witness in a civil case; and every juror residing in such county or corporation, and serving on such jury, shall be paid in like *685 manner one dollar for each day he attends on such jury.” See Code of Va. 774, sec. 10th of chap. 208. The prisoner contends that this law does not apply to a case in which all the jurors are procured within the county in which the trial is had. We can see nothing in the law to authorize such a restriction of its operation. The words are general and apply alike to' all jurors in criminal cases without respect to the place from whence they come. The pay to each is the same, whether the juror attends from a neighbouring county or is a resident of the county in which the trial takes place. But there is this difference between resident and nonresident jurors. The nonresident is entitled to mileage, and to be paid for every day that he attends the Court. The resident juror is not entitled to mileage, and can be paid only for each day that he serves on the jury. This being our view of the law, we think the Court did right in not directing the clerk to omit in his taxation of the costs of prosecution the per diem allowance made for the jurors, as directed to be done under the 11th section of chap. 211, Code of Va., p. 783.
Petition for a writ of error denied.